*Please excuse my hand writting I have Dificulty writing* [handwritten annotation]

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

SEAN ROSEN,                    )
                               ) ~~IN ADMIRALTY~~
         Plaintiff,            )
         Pro Se,               ) ~~Case No.:~~ _____
                               )
v.                             ) ~~EMERGENCY MOTION FOR~~
                               ) ~~COURT SUPERVISION WITH~~
M/Y CUPCAKE,                   ) ~~SETTLED CONFERMENT~~
her engines, tackle,           )
appurtenances, etc.,           )
                               )
CC1969 LLC,                    )
As owner of M/Y CUPCAKE,       )
                               )
BRUCE CRAIG,                   )
                               )
and                            )
                               )
NICHOLAS KINCAID,              )
                               )
         Defendants.           )
_____/

## EMERGENCY MOTION FOR COURT SUPERVISION

COMES NOW Plaintiff, SEAN ROSEN, Pro Se, under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, seeking immediate court supervision due to extraordinary circumstances and documented interference with seaman's rights, stating:

### I. INTRODUCTION AND EMERGENCY NATURE

1. Plaintiff, a seaman covered under a Marshall Islands Seafarer's Employment Agreement (SEA), suffered workplace electrical injury resulting in diagnosed Complex Regional Pain Syndrome (CRPS) Type 2.

2. Emergency supervision is required due to:
   a. Nine months of unpaid disability benefits
   b. Documented treatment interference
   c. Pattern of SEA violations
   d. Vessel sale during pending claims
   e. Multiple party coordination in misconduct

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 as this matter involves maritime claims.

4. Venue is proper in the Jacksonville Division as:
   a. Plaintiff resides in Jacksonville, Florida
   b. Substantial events occurred within this district

c. Defendants conduct business here
d. Medical treatment located here
e. Evidence located within jurisdiction

### III. FACTUAL BACKGROUND

5. Timeline of Critical Events:
   a. December 22, 2023: Workplace electrical injury
   b. December 25-28, 2023: Initial communications and treatment attempts
   c. December 28, 2023: Attempt to void SEA obligations
   d. Nine months: Continuous benefit denials
   e. June 2024: Vessel sold for $7.5 million

6. Medical Condition:
   a. Diagnosed CRPS Type 2
   b. Treatment delays documented
   c. Care interference evidenced
   d. Progression due to delays
   e. Ongoing medical needs

### IV. DOCUMENTED EVIDENCE

7. Written Communications Show:
   a. Clear SEA violations
   b. Treatment interference
   c. Benefit denials
   d. Employment status manipulation
   e. Pattern of misconduct

8. Multiple Party Coordination:
   a. Owner communications
   b. Captain involvement
   c. Insurance adjuster conduct
   d. Treatment denials
   e. Pattern of interference

### V. NEED FOR SUPERVISION

9. Court Oversight Required Because:
   a. Clear pattern of misconduct
   b. Treatment interference ongoing
   c. Benefits improperly denied
   d. Evidence preservation needed
   e. Multiple party coordination shown

10. Additional Factors:
    a. Vessel sale timing
    b. Asset disposition
    c. Medical care impact
    d. Benefit denial effects
    e. Pattern continuation

### VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests:

A. Immediate court supervision
B. Restoration of SEA benefits
C. Medical treatment protection
D. Evidence preservation orders
E. Such other relief as this Court deems proper

# SEALED SUPPLEMENT
[Filed Separately Under Seal]

# MEMORANDUM OF LAW IN SUPPORT

## I. LEGAL AUTHORITY

11. This Court has broad supervisory powers in admiralty under 28 U.S.C. § 1333.

12. Maritime law provides special protections for seamen as wards of admiralty.

13. Courts have inherent authority to protect seamen's rights.

14. Supervision is within Court's traditional admiralty powers.

15. Pattern of misconduct justifies intervention.

## II. GROUNDS FOR SUPERVISION

16. Written Evidence Shows:
    a. Clear SEA violations
    b. Treatment interference
    c. Benefit denials
    d. Employment status manipulation
    e. Pattern of misconduct

17. Medical Impact:
    a. Treatment delays
    b. Care interference
    c. Condition progression
    d. Ongoing needs
    e. Documented harm

## III. LEGAL STANDARDS MET

18. Emergency Nature:
    a. Ongoing medical needs
    b. Benefit denials
    c. Treatment interference
    d. Evidence preservation
    e. Pattern continuation

19. Likelihood of Success:
    a. Clear written evidence
    b. Multiple violations
    c. Pattern established

d. Medical impact shown
e. Maritime law protections

# EXHIBITS

EXHIBIT A: WhatsApp Communications
[Complete transcript showing violations]

EXHIBIT ~~B~~: Medical Documentation    *On  Cell  Phone*
[Treatment records and interference evidence]

EXHIBIT C: Employment Documentation
[SEA and related documents]

~~EXHIBIT D: Timeline~~
~~[Chronological record of events]~~

## VERIFICATION

I, Sean Rosen, verify under penalty of perjury that the foregoing is true and correct.

SEAN ROSEN
15509 Bream Road
Jacksonville, Florida 32226
(954) 997-5509
Date: February 5, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy was furnished to defendants by U.S. Mail on February 5, 2024.

_____
SEAN ROSEN, Pro Se

## LOCAL RULE 3.01(g) CERTIFICATION

Multiple attempts to resolve these issues have been documented without success.

SEAN ROSEN, Pro Se

=====================

[SEPARATE SEALED FILING]

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

[Caption as above]



10:39

2 Messages

‹ All Inboxes **Sean Rosen, Cupcake**    ∧  ∨

**From:** captain@yachtcupcake.com
**Date:** July 28, 2023 at 10:05:34 AM EDT
**To:** seannpatricklives@gmail.com
**Subject: New Hire**

Seann,

Please fill out this information. whether you want to be 1099 or W2 you can fill out the W4 or I 9 accordingly.

health insurance form is attached if you so desire.

Kind Regards,

Captain Nick

**i-9-2022.pdf**
921 KB

**IMMI Crum Enrollment form .pdf**
151 KB

**LYG Crew Information Sheet .dotx**
78 KB

**W4 2022.pdf**
176 KB

**Seann P Rosen SEA Marshall**

Seafarers Employment Agreement

### 1. Parties to the Employment Agreement

This agreement is made between:

Seann P Rosen

And CC1969
CUPCAKE P.O Box 1628 Round Rock TX 78680

### 2. Capacity in which seafarer is to be employed in

The capacity in which you are initially employed is Engineer Position

### 3. Notice of Termination of Employment

### Start Date: March 9 2023. Contract is indefinitely

The notice you are obliged to give to terminate your employment is 14 days. The length of notice which you are entitled to receive from the ship-owner to terminate your employment is 14 days.

The length of notice which you are obliged to give to terminate your employment is 14 days. The length of notice which you are entitled to receive from the ship-owner to terminate your employment is 14 days.

### 4. Place of work
You will be employed on the **M/Y CUPCAKE**

### 5. Wages and Account of Wages
Your wages on commencement will be US $8000 per month commencing on Date of Employment payable by wire transfer at monthly intervals on the last working day of each month.

You will be provided with a monthly account of all payments due to you and the amounts paid, including wages, additional payments, permitted/statuary deductions and the rate of exchange used where

agreed above.

☐

### 6. Hours of Work and Rest

Your hours of work will be arranged such as to ensure that you receive a minimum of 10 hours available for rest in each 24-hour period and a minimum of 77 hours rest in each seven-day period.

Your hours of rest may be divided into no more than two periods, one of which shall be at least six hours in length, and the interval between consecutive periods of rest shall not exceed 14 hours.

MLC 2006 requires the Master, or a person authorized by the Master to maintain a record of your daily hours of rest. The records should be kept in English and the working language of the ship if that is not English.

The records of your hours of rest are required to be endorsed by the Master or a person authorized by the Master, and by you, and a copy of the record as endorsed will be presented to you.

You may be required, at the absolute discretion of the Master, to work additional hours during an emergency affecting the safety of the ship, its passengers, crew or cargo or the marine environment or to give assistance to other ships or persons in peril. You may also be required to work additional hours for safety drills such as musters, firefighting and lifeboat drills. In such circumstances you will be provided subsequently with compensatory rest period(s).

### 7. Paid annual leave.

You are entitled to take 3.14 working days per month or a minimum of 38 days in each year of employment. The above minimum amount includes 11 days for public holidays which should be included in the leave period and allocated prorate across the year. You will be paid your normal basic remuneration during such leave.

If your employment commenced or terminates part way through the year, your entitlement to paid annual leave during that year will be assessed on a pro rata basis. Deductions from final salary due to you

on termination of employment will be made in respect of any paid annual leave taken in excess of your entitlement.

There is no provision for the carryover of paid annual leave from one year to the next. All paid annual leave must be taken in the year in which it accrues. There is also no provision for payment to be made in lieu of untaken leave except where paid annual leave has accrued but has not been taken at the date of termination of employment.

## 8. Termination of Employment

Your employment under this agreement may be terminated in the following circumstances:

(a) By mutual consent;

(b) Your misconduct as prescribed in the Code of Conduct for the Merchant Navy or the shipowner's Code of Conduct;

(c) Your need to terminate the agreement for compassionate or other urgent reasons, this shall be without penalty to you;

(d) If in the opinion of the Master your continued employment would be likely to endanger the vessel or any person onboard;

(e) By appropriate notice in accordance with paragraph 3 above.

Should the vessel be lost, sold or otherwise cease to be a Marshall Islands ship and your employment is terminated before the date indicated in **Section 3** of this agreement you will be paid the **greater** of either two month's salary or your notice period.
☐


## 9. Health and Social Security Benefits v

If you are on a voyage at the time that you become sick or injured, you will be paid your normal basic remuneration until you have been repatriated in accordance with the repatriation provisions set out below.

After you have been repatriated, you will be paid your normal basic remuneration for the first 16 weeks of your recuperation.

You will be provided with any medical care on-board should that become necessary, free of charge, including access to necessary medicines, medical equipment and facilities for diagnosis and

Where practicable and appropriate, you will be given leave to visit a qualified medical doctor or dentist in ports of call for the purpose of obtaining treatment.

In the event of sickness or incapacity, you will be provided with medical care, including medical treatment and the supply of necessary medicines and therapeutic devices and board and lodging away from home until your recovery or until your sickness or incapacity has been declared of a permanent character, subject to a maximum period of 16 weeks.

In addition, the shipowner will meet the cost of the return or your property left on board to you or your next of kin.

In the event of the seafarer's death or long-term disability due to an occupational injury, illness or hazard occurring from the date on which the seafarer leaves home to join the vessel to the date on which the seafarer is duly repatriated, the seafarer will be entitled to compensation, the levels of which will be attached as an annex to this agreement.

In the event of your death occurring on board or ashore during a voyage, the shipowner will meet the cost of burial expenses and the return or your property left on board to your next of kin.

### 10. Repatriation

You will be entitled to repatriation, at the expense of the shipowner, if you are away from your country of residence

• when this agreement is terminated;

• when this agreement expires;

• in the event of illness or injury or other medical condition requiring your repatriation, in the event that the ship is proceeding to a Warlike Operations Area or the event of termination or interruption of employment in accordance with an industrial award or collective agreement;

• in circumstances where you are no longer able to carry out your duties under this agreement or cannot be expected to do so e.g. shipwreck, the sale of your ship or a change in your ship's registration, and



. . . . . . . . . . . . . . . . . . . . . . . A . . . IR        to        (*Fort Lauderdale FL*).

The Marshall Islands Regulations on repatriation shall be made available to you on board the ship. **(IAW MI Regulation 7.52, MI Maritime Act 843 & 844 & the provisions of MN #7-052-1**

**NOTE -** You may not be entitled to repatriation at the expense of the shipowner in circumstances where you have been dismissed on disciplinary grounds or have breached your obligations under this Agreement. In such circumstances the shipowner will still be liable to repatriate you but is entitled to recover from any wages due to you the cost of doing so.

☐

12. **Seafarer's Complaint Procedure**
If you have a complaint regarding your employment you should follow the shipowner's "Seafarer's Complaint Procedure". The procedure will be made available to you, if so requested, before you sign this agreement. The shipowner's "Seafarer's Complaint Procedure" will also be provided to you when you join your ship.

13. **Compensation in respect of loss of personal property as a result of the loss or foundering of the vessel**
Where you lose personal property, as a result of the vessel on which you are serving foundering or being lost, the shipowner will pay compensation up to a maximum of . . . . . . . . . . . s . . . 1, . . . 00 . . . 0 . . . 00 . . . U . . . SD
(*insert amount*).

14. **Disciplinary Rules and Procedure**
The disciplinary rules applicable to you are set out in the Code of Conduct for the Merchant Navy, which has been agreed between the UK's Chamber of Shipping, Nautilus UK and the National Union of Rail, Maritime and Transport Workers, or the Shipowner's Code of Conduct.

The Code of Conduct will be made available to you, if so requested, before you sign this agreement.
If you are dissatisfied with any disciplinary decision taken in relation to you, you should refer to the disciplinary procedure set out in the Code of Conduct, which may be obtained from the . . . . . . . . . . . . . . . . .
Ca . . . pt . . . ai . . . n . . . or . . . Ch . . . ie . . . f O . . . ff . . . ic . . . er        [Captain: 302-650-0789]

15. **Governing Law**
The parties to this contract hereby stipulate that the terms and conditions laid down herein shall be subject to the

applicable provisions of the Maritime Law and Regulations of the Republic of the Marshall Islands. Any dispute as to the terms and conditions of this contract shall be resolved in accordance with the Maritime Law and Regulations of the Republic of the Marshall Islands.

Case 3:23-cv-00049- Filed 02/08/24 11 of 27 PageID 16

## Declaration:

I confirm that I have freely entered this agreement with a sufficient understanding of my rights and responsibilities, and I have been given an opportunity to review and seek advice on the agreement before signing.


Signed…………………………………………………………………
………………………………………
(Seafarer)


Date…………………...………………………………………………
…………………………………..

I confirm that the seafarer has been informed of their rights and duties under this agreement prior to or in the process of the
seafarer's engagement onto the vessel.


Signed…………………………………………………………………
………………………………………
(Shipowner or Shipowner's Representative)


[Place where this Agreement is entered into]
…………………………………………….………


[Date where this Agreement is entered into]
……………………………………………………
☐


**NOTES:**

i **"insert date of birth or age"** - Normally the date of birth should be inserted in full. Only in exceptional circumstances should the seafarer's "age" be inserted. This should be the seafarer's age at the time the SEA was signed and should be

ii **"Capacity in which seafarer is to be employed"** - This will be the capacity in which the seafarer is to be employed at the time the SEA is signed by the parties to it. Given that an SEA may run for a considerable length of time if the seafarer remains with the same shipowner, it is possible that the capacity in which the seafarer is employed could change over time. The shipowner may wish to consider whether a new SEA will be issued at such time or alternatively include a provision indicating how any changes to capacity will be dealt with e.g. by means of a letter setting out the new capacity and the relevant wage scale.

iii **Wages** - As with "Capacity" (Note ii above) wages payable to the seafarer are likely to change if employed by the same shipowner over a significant period of time. When completing the "Wages" entry in the SEA, the shipowner will therefore need to bear this in mind and include appropriate wording to cover any future wage increases e.g. by providing for the wage to increase as notified to the seafarer in writing.

iv **"Paid Annual Leave"** - The period of paid annual leave must be not less than that specified in the Maritime Labour Convention, 2006 Standard A2.4 with the addition of 8 public holidays per annum to be taken prorata. Where it is more appropriate to do so, the formula to be used for calculating annual leave, e.g. 3.2 days per month of employment, may be inserted instead of an actual number of days.

v **Social Security Benefits** - These include payment by the shipowner of any costs incurred in respect of any sickness or injury occurring between the date on which they commenced duty on board a ship and the date on which they are deemed to have been duly repatriated. This also includes payments that shipowners are required to make in respect of the death or long term disability of a seafarer due to an occupational injury, illness or hazard occurring while the seafarer is serving under a seafarer's employment agreement or arising from their employment under such agreement.

vi **"Repatriation"** - The entitlement to repatriation entails transport to the place where you signed your employment agreement, your country of residence, or such other place as mutually agreed with the shipowner when you sign the SEA, or subject to the agreement of the shipowner, another place of the seafarer's choosing.

vii **The maximum period of service** following which a seafarer will be entitled to repatriation is to be not more than 52 weeks minus the period of statutory paid annual leave

viii **Applicable Collective Bargaining Agreement(s)** – We do not have a collective bargaining agreement.

ix **"Inclusion of Additional Provisions by Shipowner"** – It is recognised that there will be occasions on which shipowners wish to include provisions additional to those set out in the Maritime Labour Convention. There is no objection to the inclusion of such additional provisions however any such provisions must not conflict with the provisions of Marshall Islands general or merchant shipping legislation or any international instruments which have been extended to the Marshall Islands. The Marshall Islands will not be checking and approving additional provisions, as it currently does for crew agreements, and it will therefore be the responsibility of the shipowner to ensure that there is no conflict. Failure to do so may result in refusal to issue a Maritime Labour Certificate or its cancellation if one has already been issued.

x **"The Place where Agreement is entered into"** should state the name of village, town or city and country where Agreement is signed by the parties to it

xi **"Rotational Employment"** Annual leave for rotational employees shall be calculated as one day of leave accrued for every one day worked. When flying to the boat to begin the rotation, the first day worked will begin at the time of the first flight. If there is a loss/gain of a day due to time changes, the days worked will be calculated based on the number of hours traveled; 24 hours = 1 day. However, when departing, the flight day will not be counted as a day worked.







11:03      .ıl 🤶 🔋

Photo ⌄      Done


Bruce

Ryan, thank you for your response. I will run this by the payroll attorney in the Maritime Attorney. I'm not sure we can consider 1099 American employees or actually on a salary that is an inaccurate way to be paid and we are having legal issues now because of the accident that occurred with the engineer because he was recorded as a 1099 employee and is not on our insurance, so he has no medical coverage. As a 1099 employee you're supposed to have your own insurance. Do you have your own insurance? And if yes, can you please send us a copy of the policy?

We are currently having our Maritime Attorney review the method that Nick has used to sign each employee up and then what capacity to make sure that everything is done correctly according to the Maritime law, the Jones law, and the internal revenue service for US based citizens it may be some time before we get a final plan in place but I can tell you from what I found out since becoming the manager of the boating business after Michael left the company that things were not being done correctly and still are not being done correctly

# EXHIBIT A
## WhatsApp Communications Evidence

1. Initial Communications - August 30, 2023
[12:53:14 PM] System Message: Messages and calls are end-to-end encrypted. No one outside of this chat, not even WhatsApp, can read or listen to them.
[12:53:14 PM] Sean Rosen: I'm here in the galley if you'd like me to address the bulb, if not all address is when your room is free
[12:53:52 PM] Bruce Craig: We're going to eat lunch around 1 PM if you want to do it while we're eating please
[12:54:04 PM] Sean Rosen: Yes sir
[12:54:16 PM] Bruce Craig: Thx

2. Injury and Initial Response - December 2023
[12/25/23, 12:51:43 PM] Bruce Craig: Hi Seann, I hope you're recovering well. I just wanted to check and see how you're doing? Nick has been keeping me posted. I'm sorry that happened to you and I hope you recover quickly. Thanks, Bruce.

[12/25/23, 1:00:40 PM] Sean Rosen: Good Day Sir,
Thank you for the well wishes, I am thankful this holiday as unexpected chain of events has caused some disruptions, however I am Exceptionally thankful this day as I'm sure you can relate. I am hopeful to get proper medical attention quickly and get turn back around. This is the holiday season which for me is earning season and I feel attached to the gang I'm fishing with, hope to be in and out. Enjoy the Beautiful Day. Seann

[12/25/23, 6:41:37 PM] Bruce Craig: How are you feeling? What kind of doctor do you see for electric shock?

3. Treatment Delay Documentation
[12/27/23, 1:04:15 PM] Bruce Craig: Checking in. Hope you're better.

[12/27/23, 3:23:36 PM] Sean Rosen: Sorry for the slow communication, I'm struggling a bit to get seen, my hand is definitely affected, and the marina has yet to direct me. Frankly this sucks well roundedly speaking.

4. Critical Communications Regarding Care
[12/28/23, 11:19:36 AM] Bruce Craig: Do you have the contact information on the marina please
[12/28/23, 11:19:54 AM] Bruce Craig: What town are you in? Do you need help to find a doctor?

[12/28/23, 11:26:34 AM] Sean Rosen: I went to er again yesterday after waiting patiently all day for Deon to call me back and provide me payment info, he never provided, ER doctors confirmed right hand nerve damage

5. Key Employment Status Communication
[12/28/23, 12:23:26 PM] Bruce Craig: We do not want to lose you. I'm just trying to help you.

[12/28/23, 12:24:49 PM] Bruce Craig: Unfortunately, you are a contractor and not an employee so it creates a difficult situation. You as a contractor should be carrying your own insurance. Do you have any insurance?
From that point of view, my hands are tied, but I still want to see what we can do to help with the situation and get you back to work as long as you're able and willing

6. Follow-up Communications
[12/29/23, 1:53:51 PM] Bruce Craig: Any updates
[12/29/23, 1:54:00 PM] Bruce Craig: Any communication from the Marina,?
[12/29/23, 2:25:21 PM] Sean Rosen: Nothing.

7. Legal Discussion Communications
[12/30/23, 1:03:54 PM] Bruce Craig: If I don't hear from him by the end of the day on Tuesday,
I'm gonna have my attorney send them a demand letter

[12/30/23, 4:38:22 PM] Sean Rosen: Maybe I'd like to intro I too have some form of counsel?

[12/30/23, 4:40:14 PM] Sean Rosen: I don't know just wish they would followed through with
what I was told.

8. Formal Request Communication - January 2, 2024
[1/2/24, 2:28:08 PM] Sean Rosen: Subject: Urgent: Request for Medical Assistance and
Clarification of Employment Status

Dear Captain Nicolas Kincaid and Mr. Bruce Craig,

I hope this message finds you well. I am writing to address a pressing issue concerning my
recent injury in the service of the Motor Yacht Cupcake and to seek your assistance in its
resolution.

On December 22nd 2023 while performing my duties and attempting to plug in a water hose
on the dock, I suffered an electrical injury due to a live shore power box. This accident,
unfortunately, resulted in injuries that required prompt and proper medical attention in the
United States. I have photographs that support the details of this incident, which I will provide
on request.

There seems to be some confusion regarding my employment status. Contrary to your email to
me that I am an independent contractor, my role and responsibilities on the yacht, along with
the terms of our engagement, clearly establish me as an employee of the vessel. As such, I
should be afforded the rights and protections that come with this status, including access to
medical care and assistance under the boat's insurance policy in the event of an on-the-job
injury.

Given the nature of my role onboard and the circumstances under which the injury occurred, I
am confident that the insurance associated with the Motor Yacht Cupcake is designed to cover
such unforeseen incidents and is equipped to assist me in obtaining the necessary medical
attention.

I am eager to return to my responsibilities onboard the yacht, serving to the best of my abilities.
However, to do so, it is imperative that my current situation is addressed promptly and with the
support of the vessel's resources.

I am requesting that the vessel's insurance be engaged to cover the medical expenses and
guidance be provided on how to proceed with receiving the necessary medical attention. I
would appreciate your immediate attention to this matter and your assistance in affirming my
employment status so that we may advance with the proper protocol.

Please advise on the next steps as soon as possible, so that we may proceed in a manner that
ensures my wellbeing and reflects the integrity of our operations on the Motor Yacht Cupcake.

**megayacht technical services international** — mtsi

MOTOR YACHT CUPCAKE

CUPCAKE

| mtsi | **ACCIDENT / INCIDENT REPORT** |
|------|-------------------------------|

**Location:** Falmouth Harbour Antigua    **Date:** 12-22-2023    **Time:** 14:02

**VESSEL'S REPORT**

Type of Incident: Shock / Electrical

Person(s) Involved: Sean P Rosen

Name of Originator:

| Injuries Sustained: | Yes ☑ No ☐ | Mechanical Damage: | Yes ☐ No ☑ |
|---|---|---|---|
| Environmental Damage: | Yes ☐ No ☑ | Structural Damage: | Yes ☐ No ☑ |

Attach pictures, diagrams, witness statements, weather reports, navigation screen shots, other relevant info

**DETAILS OF ACCIDENT/INCIDENT:**

Engineer went to hook up water to the Dock pedestal. upon
Grabbing the pedestals water spicket he was then shocked,
At first he was unable to let go of the spicket so
when he fell over let go of spicket. he was conscious
and told the captain what just occured. inspection showed
The spicket was hot

**ROOT CAUSE OF ACCIDENT/INCIDENT:**

Shore Connections were wired Reverse (Neutral & hot) causing the
spicket to Shock the engineer when he hooked up to water
No warning prior to power being turned on.

**CORRECTIVE ACTION(S) TAKEN, SUGGESTED:**

wiring was corrected after problem.

**Completing Officers Signature:**

| **SHORE MANAGEMENT ACTION / COMMENTS** |
|---|
| Victim went to hospital |

| Reporting required? Yes ☐ No ☑ | Class Informed: | Yes ☐ No ☑ | Registry Informed: | Yes ☐ No ☑ |
|---|---|---|---|---|
| Signed: | | Management Review Date: | | |

**Section A**
(To be completed by a State Registered Medical Practitioner)

To : Mr./Mrs./Miss. _Seann Rosen_

I hereby certify that on _22nd December_ 20 _23_ I examined you

and found that you are suffering from _47-56_ In my

opinion, you will be fit to resume work on _12th January_ 20 _24_

Occupational Injury [✓] Yes  [ ] No

Name _MOURILLON_
(Please Print)

Address _SLBMC_

Official Stamp

Signature _Mourillon_    Date _22/12/2023_

**Section B**
(Medical Certificate for employer)

I hereby certify that on _22nd December_ 20 _25_ I examined

_Seann Rosen_ and by reason of illness he/she

is incapacitated. In my opinion, he/she will be fit to resume work on _12th_

_January_ 20 _24_

Signature _Mourillon_    Date _22/12/2023_

**Section C**
(To be completed by Claimant)

Name ........................................ Social Security No. ..............

Telephone No.(H) ............... (C) ............... (W) ...............

**PAYMENT OPTION** (Please choose one)

Mailing Address .............................................................

Or

Name ................................................ A/C Type ......... A/C# ......

Bank ................................................ Address ...............

Employer Name ................................... Address ...............

I claim Sickness Benefit from ................... 20 ......... During the three months
immediately before my illness, my other employer(s) was/were

| Employer | Address |
|---|---|
| (a) ............................. | ............................. |
| (b) ............................. | ............................. |
| (c) ............................. | ............................. |

Signature ........................................ Date ...............

**Section D**
(To be completed by employer)

This is to certify that ............................ has been employed in this

establishment from ........................ 20 ............., his/her weekly/monthly

rate being $ ........................ He/She last worked on .................. 20 ..........

and has been absent from ........................ 20 ........ on account of incapacity

which was/was not due to an injury sustained during the course of his/her employment here.

HE/SHE RETURNED TO WORK ON .................... 20 .......... (continued overleaf)

$10:00 advance sale





# U.S. Maritime Consultants, Inc.

11430 North Kendall Drive
Suite 202
Miami, Florida 33176
**Phone:** 305-273-4466
**Fax:** 305-273-4455

January 15, 2025

Seann Rosen
15509 Bream Road
Jacksonville, FL 32226

**RE:**   **M/Y "CUPCAKE"**
        **INJURY   : SEANN ROSEN, CREW**
        **O/REF    : 24/16397**

Dear Mr. Rosen,

We write to attach our check in the amount of $4,000.00, which represents 3rd advance towards settlement.

If you have any questions regarding the above, please do not hesitate to contact the undersigned.

Very truly yours,

Brian P. Kelly
BPK/jp

Enc:   Original Check #21457 / Seann Rosen / $4,000.00

D0115/T0115



# U.S. Maritime Consultants, Inc.

11430 North Kendall Drive
Suite 202
Miami, Florida 33176
**Phone:** 305-273-4466
**Fax:** 305-273-4455

January 15, 2025

Seann Rosen
15509 Bream Road
Jacksonville, FL 32226

**RE:**     **M/Y "CUPCAKE"**
        **INJURY    : SEANN ROSEN, CREW**
        **O/REF      : 24/16397**

Dear Mr. Rosen,

We write to attach our check in the amount of $3,410.00, which represents the Maintenance from January 1, 2025, to January 31, 2025, for $110.00 a day per 31 days.

If you have any questions regarding the above, please do not hesitate to contact the undersigned.

Very truly yours,

Brian P. Kelly
BPK/jp

Enc:    Original Check #21456 / Seann Rosen / $3,410.00

D0115/T0115



7:48    .ıl 5G 🔋

‹ 50         B
                 K
         2 People ›

New name available from Bruce        Update    ✕
Bruce Craig

Please make contact with the
insurance company for the Marina, so
they can take over the financial
responsibility and help you in all good
ways. Thanks, Bruce.

Feb 6, 2024 at 12:45 PM

Bruce

Good afternoon Seann, I understand
from the insurance companies that
measure have  been taken to ensure
that your medical expenses,
maintenance,  and other cost are
covered. It's important that you
communicate with all of these folks to
get what you need. Please destroy and
delete copies or photos of my credit
card as you no longer have permission
to use my credit card or any credit card
or accounts related to me or my
companies.
I also need you to provide an
accounting of any charges that you
made to my credit card or any
company credit card so we can
account for it and submit it for
reimbursement to the insurance
companies.
Please advise.

Thanks, Bruce.

+    iMessage                    🎤

5/16/24, 4:54 PM                                    Mail - Colby Black - Outlook

RE: AUTH

Brian Kelly <brian_kelly@usmaritime.com>
Thu 5/16/2024 3:10 PM
To:Colby Black <colblack@coastalhealth.com>
Cc:USMC Yachts <yachts@usmaritime.com>

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize
the sender and know the content is safe.

Good afternoon Colby,

We have not been asked to authorize anything beyond Coastal Health. We are happy to contact
medical providers, confirm they accept work-related claims, and provide our billing information. We
cannot have crewmembers making their own appointments as they need to be related to the claim and
authorized by our office. It makes billing a hassle for both the provider and USM after treatment has
been administered.

We are happy to contact the medical provider mentioned below to confirm they can accept this claim as
work-related, but we would require the script for the referral (what they are being treated for) as well as
their contact information.

As previously mentioned this is not a personal health insurance. We are authorizing treatment relating
to our work-related injury.

Now with that being said, we were asked to reimburse costs for a hernia surgery from defense counsel
just this past week. So we will be satisfying those costs relating to that surgery, whether it is reimbursing
Mr. Rosen or paying the facility directly. We have not received any information regarding this surgery as
of yet.

Please let me know if you have any questions regarding the above.


Note: Please copy yachts@usmaritime.com on all e-mails to ensure a prompt reply.

Very truly yours,

Brian P. Kelly
U.S. Maritime Consultants, Inc.
11430 North Kendall Drive, Suite 202
Miami, FL 33176

P: 305-273-4466
F: 305-273-4455
C: 305-724-7666
24 Hour Response Line: 305-281-7515

Brian_Kelly@USMaritime.com
http://usmaritime.com

CONFIDENTIALITY NOTICE
This e-mail message and any attachments included in it may contain information that is privileged, confidential or
otherwise exempt from disclosure under applicable law and is intended solely for the individual(s) to whom it was

https://outlook.office.com/mail/AAMkAGNlMDh0OGE...

5/16/24, 4:54 PM                                        Mail - Colby Black - Outlook

## RE: AUTH

Brian Kelly <brian_kelly@usmaritime.com>
Thu 5/16/2024 3:10 PM

To:Colby Black <colblack@coastalhealth.com>
Cc:USMC Yachts <yachts@usmaritime.com>

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon Colby,

We have not been asked to authorize anything beyond Coastal Health. We are happy to contact medical providers, confirm they accept work-related claims, and provide our billing information. We cannot have crewmembers making their own appointments as they need to be related to the claim and authorized by our office. It makes billing a hassle for both the provider and USM after treatment has been administered.

We are happy to contact the medical provider mentioned below to confirm they can accept this claim as work-related, but we would require the script for the referral (what they are being treated for) as well as their contact information.

As previously mentioned this is not a personal health insurance. We are authorizing treatment relating to our work-related injury.

Now with that being said, we were asked to reimburse costs for a hernia surgery from defense counsel just this past week. So we will be satisfying those costs relating to that surgery, whether it is reimbursing Mr. Rosen or paying the facility directly. We have not received any information regarding this surgery as of yet.

Please let me know if you have any questions regarding the above.

Note: Please copy yachts@usmaritime.com on all e-mails to ensure a prompt reply.

Very truly yours,

Brian P. Kelly
U.S. Maritime Consultants, Inc.
11430 North Kendall Drive, Suite 202
Miami, FL 33176

P: 305-273-4466
F: 305-273-4455
C: 305-724-7666
24 Hour Response Line: 305-281-7515

Brian_Kelly@USMaritime.com
http://usmaritime.com

CONFIDENTIALITY NOTICE
This e-mail message and any attachments included in it may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law and is intended solely for the individual(s) to whom it was



**Serenity Mental Health Centers**
3300 N Triumph Blvd, Ste 500
Lehi, UT 84043

PATIENT ACCOUNT
**120674**

PATIENT NAME
**Seann Rosen**

| STATEMENT DATE | DUE DATE |
|---|---|
| 01/07/2025 | 02/01/2025 |

Billing Phone:(844) 692-4100
Billing Fax:(801) 901-1194
Billing E-Mail: billingquestions@serenitymentalhealthcenters.com
Pay Online: https://www.patientnotebook.com/smhc
Office Hours: 8:00 AM through 5:00 PM MDT

| Date | Description | Charges | Payments/ Adjustments | Amount Due |
|---|---|---|---|---|
| 02/16/2024 | Patient: Seann Rosen, Account Num: 120674 | | | |
| 02/16/2024 | Claim:807203, Provider: Patricia Gilliano, RN, PMHNP | | | |
| 01/07/2025 | Insurance Details: Not Provided | | | |
| 02/16/2024 | NOSHW No Show Fee | 20.00 | | |
| 02/16/2024 | Your Balance Due On These Services ... | | | 20.00 |

IMPORTANT MESSAGE →

**We have recently changed our billing to a fully in-house billing team to offer greater service and flexibility to our patients. Please reach out for help with questions, payment plans, or other arrangements. Call us at 844-692-4100.**

AMOUNT DUE
**20.00**

Please detach payment stub and return with payment

**Serenity Mental Health Centers**
**3300 N Triumph Blvd, Ste 500**
**Lehi, UT 84043**
**RETURN SERVICE REQUESTED**

AMOUNT ENCLOSED: $_____

Please Circle Method of Payment: 

| CARD NUMBER | EXP. DATE | AMOUNT |
|---|---|---|
| SIGNATURE | | 3 DIGIT CCV |

| DUE DATE | AMOUNT DUE | PATIENT ACCOUNT |
|---|---|---|
| 02/01/2025 | 20.00 | 120674 |

| ADDRESSEE: | MAKE CHECKS PAYABLE/REMIT TO: |
|---|---|

166503 - 87



**SEANN ROSEN**
**15509 BREAM RD**
**JACKSONVILLE FL 32226-1505**

**Serenity Mental Health Centers**
**3300 N TRIUMPH BLVD STE 500**
**LEHI UT 84043-6475**

1 of 1

166503-87-24210431

